NONPRECEDENTIAL DISPOSITION
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted February 10, 2020*
Decided February 10, 2020

**Before**

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

AMY J. ST. EVE, *Circuit Judge*

No. 18-3577

| | |
|---|---|
| KEITH PERRY,<br>    *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 15-cv-06893 |
| STATE OF ILLINOIS DEPARTMENT OF HUMAN SERVICES,<br>    *Defendant-Appellee*. | Andrea R. Wood,<br>*Judge*. |

**O R D E R**

Keith Perry worked as a caseworker for the Illinois Department of Human Services until the Department fired him for improperly using food-stamp benefits. Before his discharge, the Department had suspended Perry several times for violating its workplace policies. Perry, a man over 40, sued the Department for discrimination based on age, sex, and retaliation for filing previous charges of discrimination. The

---

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

district court entered summary judgment for the Department. We affirm because Perry did not present evidence that the Department disciplined or fired him unlawfully.

After working for over a decade on public-benefits cases at an office in Chicago, in 2012 Perry began to clash with coworkers and supervisors, leading to progressive discipline. First, after a coworker accused him of threatening her, Perry received a written warning because an investigation determined that, although the accusation was unfounded, he nonetheless behaved unprofessionally. The second discipline came four months later. The head of the local office, L.K. McIntosh, suspended Perry for one day for insubordination after a supervisor dropped a case file (Perry believes deliberately) and told Perry to pick it up, which he refused to do. Another conflict flared three months later. An internal investigation found that Perry had threatened McIntosh (a guard had to restrain Perry), conduct that violated the Department's policy against workplace violence. For this, a regional administrator suspended Perry for 29 days, and a union liaison approved the suspension. Perry believes that this finding was mistaken: He asserts that he was not violent or threatening; instead, McIntosh had berated him to "stop acting like a little ass girl and do what [the supervisor] told you to do" after Perry refused the supervisor's order to help a customer as Perry was leaving work.

More discipline followed Perry's return from suspension. McIntosh reassigned Perry to a new role and, to reduce conflict, assigned a new supervisor. Despite this separation, Perry and his former supervisor still quarreled. The supervisor confronted Perry about attendance issues, sparking a clash between them. After an investigation, the Director of Labor Relations for the Department suspended Perry for 45 days for "conduct unbecoming a state employee." A union liaison approved this discipline too.

The final discipline came a few months later. During his suspension, Perry applied for and received food stamps because of his loss of income. Though Perry returned to work on October 15, 2013—making him ineligible for benefits on that date— charges on his food-stamp card continued until February 18, 2014. (Perry maintains that he lost his card and did not know that it was used improperly.) When the Department discovered these charges, it investigated the use of Perry's card and questioned Perry, McIntosh, and a regional administrator. After considering the evidence, the Department fired Perry for failing to monitor properly the use of his card.

Litigation followed. Perry had filed administrative charges against the Department four times between 2013 and 2014. He asserted that the Department suspended, reassigned, and discharged him because of sex and age and in retaliation

for earlier administrative charges. Perry then sued the Department under the Age Discrimination in Employment Act, 29 U.S.C. § 623, and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. In opposing the Department's motion for summary judgment, Perry swore that—at an unspecified time—McIntosh called Perry an "old-timer" and stated that he thought that unnamed members of the Department wanted to discharge "old-timers" because of their high salaries and replace them with "kids out of college" for less money. The district court entered summary judgment, ruling that Perry lacked adequate evidence of discrimination or retaliation.

On appeal, Perry generally challenges the district court's entry of summary judgment, but his briefing is deficient in three ways. First, his two-and-a-half page opening brief does not develop relevant arguments. Rather it asserts that the district court violated his due process rights by not allowing him to present evidence. But "[t]he summary judgment procedure that Rule 56 of the Federal Rules of Civil Procedure creates is not a denial of due process." *Altenheim Ger. Home v. Turnock*, 902 F.2d 582, 585 (7th Cir. 1990). Perry had to present evidence that would necessitate a trial. If, as we are about to discuss, he failed to do so, then the district court properly followed Rule 56 by granting summary judgment without a trial. Second, Perry argues that the Department denied him "whistleblower protections," but he failed to preserve this claim by not raising it in the district court. *See Robinson v. Davol Inc.*, 913 F.3d 690, 696 (7th Cir. 2019). Third, Perry's reply brief is just a resubmission of his summary judgment response in the district court so it does not engage with the district court's decision.

In any event, nothing in the record justifies overturning summary judgment. In reviewing an entry of summary judgment on a claim of discrimination or retaliation, we assess whether the evidence as a whole would permit a reasonable jury to find that the plaintiff's sex, age, or prior charges led to adverse employment actions. *See Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

We begin by assessing whether the statements that Perry attributes to McIntosh suggest unlawful discrimination. Perry accuses McIntosh of calling him an expensive "old-timer" whom "they" wanted to replace with cheaper "kids." We will assume that the comment reflects age bias; nonetheless, it cannot get Perry past summary judgment. Perry does not state when McIntosh called him "old." For stray remarks to defeat summary judgment, they must closely relate in time to the adverse actions. *See Overly v. KeyBank Nat. Ass'n*, 662 F.3d 856, 865 (7th Cir. 2011). Second, Perry's assertion that McIntosh said that unnamed persons wanted to fire older workers does not support his discharge claim. Although McIntosh was involved in the decision to fire Perry, he was

one of multiple decisionmakers. No evidence suggests that the Director, who ultimately signed off on Perry's discharge, based his decision on any bias. *See Bagwe v. Sedgwick Claims Mgmt. Servs., Inc.*, 811 F.3d 866, 886 (7th Cir. 2016). Finally, the comment does not purport to explain the earlier decisions to suspend or reassign Perry during the two years before his discharge. So it is not probative of those claims either.

Perry also asserts that McIntosh called Perry "a little ass girl" during a clash with a supervisor that later led to a 29-day suspension. Even assuming this comment reflects a gender bias, it is not evidence that the Department suspended Perry because of this bias. Nothing suggests that the investigator of the clash, or the regional administrator who suspended Perry based on that investigation, shared, acted on, or was influenced by any bias. *See Milligan-Grimstad v. Stanley*, 877 F.3d 705, 711 (7th Cir. 2017).

Finally, Perry presents no evidence that the Department retaliated against him for filing administrative charges. He cites the closeness in time between filing his charges of discrimination and the adverse actions. Yet as we have often said, mere temporal proximity alone is insufficient to establish an inference of retaliatory motive. *See Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 674–75 (7th Cir. 2011).

We have reviewed Perry's remaining arguments, and none have merit.

AFFIRMED